Yes, ma'am. Please the court. Rita Latsanova. Can everybody hear me? Yes. I'm here with my partner, Scott Pritchard. We represent HHM, the General Partner of Hidden Hills Partnership, as the appellant. And we're also here for the General Partners of Hidden Hills and Parkway Partnerships as respondents on the cross appeal by Amtax. And I would like to spend, to save two minutes of my 10 minutes on my appeal for rebuttal, and then I'll use the rest of my time when I come back. So counsel, are you the only one who's going to argue this case? Yes. Okay. You're just splitting your time between your appeal and your cross appeal? Correct. Okay. So HHM's appeal involves purely legal issues. The first issue is the interpretation of the environmental indemnity. The second issue is the district court's post-trial order that prohibited the court-appointed appraiser from considering the arsenic and lead contamination in the planning on the property's fair market value. Now, if the court agrees that the indemnity should be read according to its plain terms the way we read it, then there's no basis to direct the appraiser to ignore contamination. The environmental indemnity is non-ambiguous. There's absolutely no dispute as to why it was drafted. When the partnership was formed in 2001, everybody knew that the soils and hidden hills were contaminated. They had high levels of arsenic and lead. That's at ER 39 paragraph 21. This delayed the closing by a year. And this is why the lender required an escrow account of over a million dollars to address contamination. Counsel, in your view, how did the district court misread the indemnity provision of the agreement? Well, several ways. The district court, we believe, misread the indemnity by applying it to an option exercise. And we believe it should not be read to apply to an option exercise. These are sophisticated parties. If they wanted the indemnity to apply to an option exercise, which is a big event on everybody's mind, because... Counsel, is it a fair reading of the provision that the general partnerships were supposed to bear all the costs of environmental remediation? Yes, if there is remediation. In that case, the general partner bears the cost, correct. Well, so why would it be important to factor in those costs to the option if ultimately the general partners were going to be responsible for those amounts? Well, because the general partner remains responsible for remediation up to the limited partner exits. The risk was on the general partner of remediation. And after the limited partner exits, the general partner maintains that risk. And the limited partner no longer has that risk. That's what the parties are arguing for. That's exactly what happened. If there is remediation, it's no longer the limited partner's problem. Limited partner exits, the general partner maintains the risk. But so how in your view does that obligation factor into the option exercise? It does not. In the appraisal. So your view is the appraisal should include any remediation costs or deduct for remediation costs? Yes. Why? If the limited partner is never going to be responsible for that cost, why should that be deducted from the amount that the limited partner is entitled to receive? Well, the limited partner is entitled to receive an amount that's calculated according to a formula that's in the limited partnership agreement. The formula, there's a long section about the exit process for the limited partner, and it has a formula for calculating what the limited partner receives in the process. It's very important to know that Amtax took the position that it only sees from the indemnity the distributions it would receive in the option exercise from the general partner. But there are no distributions at all. There are not the only distributions that are indemnified by the plain terms of the indemnity are the distributions from the partnership. And the option exercise includes no distributions from the partnership. It's only a payment of cash by the general partner to the limited partner, and there's no indemnity for that. But going back to what should be deducted, I think it's fairly simple. And it is, if the court looks at ER 105, that's an exhibit that shows the calculation of the option price. And land well at ER 105 is the fair market value. Fair market value. Opposition is very simple. The fair market value should be decided by an independent appraiser using his or her own independent judgment. It's very simple, and everything flows from that. And incidentally, so I don't know if the fair market value depends on contamination or does not depend on contamination. We have four appraisals. Two appraisers said that the market cares about contamination, and two appraisers said, well, Angie Noble, Amtax's appraiser, was of the opinion that the market doesn't care about contamination. Council, if some regulatory agency, federal or state, had come in during the existence of the agreement here, while we were still, before the option was exercised, and said, you know something, this is not a good situation. We're concerned about the tenants here, and you're going to have to clean these soils to the tune of $5 million. So who would be responsible for that prior to the exercise of the option? Well, it would be first the escrow account would be drawn. Okay. And then the general partner. Okay, so $1 million from the escrow account, which has already been set aside, $4 million, and that was set aside by the general partner. That would be satisfied by the general partner, yes. Right, so the $5 million would be paid for one way or the other from two different pots, but both that belong to the general partner. Correct. Now, what if there were some risk that a state or federal agency would come in shortly after the exercise of the option, and say, you know something, this is not a good situation, and you're going to have to clean this up to the tune of $5 million? Well, if the limited partner is out, that risk is still on the general partner. Well, and if the limited partner has exercised an option, then it's the limited partner's problem? Well, the limited partner doesn't have an option. The general partner has an option. Right, but if the limited partner has exercised the option and has now taken over the property, then the risk of something happening at a future time is theirs, right? Well, but the limited partner doesn't have an option. There is no possibility for the limited partner to take over the property. It doesn't have an option. The only party that has an option is the general partner. I'm sorry, of course, right. So the general partner then would, I'm sorry, I understand. I'm sorry, I had something backwards in my head. So if the option were exercised, I'm sorry, if the option were exercised by the general partnership, and they purchased this, and after the exercise of the option, state or local authorities came through and said, you're going to have to clean this up, and it's going to cost you $5 million, then the general partner would be liable for that. And so one way or another, either prior to the exercise of the option or post-exercise of the option, the general partner assumes all the risk that somebody will come in on this. Now, why isn't that part of the hold harmless clause that the limited partnership exercised? The value of this property depends on whether or not the general partner has to clean this thing up. Well, because that's not what the environmental indemnity provides. The environmental indemnity provides that general partner is responsible for the cleanup, and she's responsible for the third-party claims, which she continues to be responsible for. There's no risk of the limited partner. The limited partner came in, invested the money, stayed for 15 years. Nothing bad happened. None of the risk that the limited partner was protected for materialized, and now the limited partner exits happily after 15 years without bearing any of that risk. That was the deal. That's the way it always is in a limited partnership. Having done these a lot as an attorney, I mean, it's usually 1% general and 99% limited, and the only thing that limited partners have at risk is their cash. Their responsibility and everything else falls upon the general partner. Well, that's exactly what they bargained for. That's exactly what they got. It doesn't mean that they get more from the option exercise because that's not what the environmental indemnity provides. All we say here is that when the district court appointed the fourth appraiser to provide the final appraiser of Hidden Hills, that fourth appraiser, Mr. Walkentiger, should be free to use his own independent judgment as to what goes on line 12 in ER 105. It should be his own independent judgment as to the market cares about contamination or the market doesn't care about contamination. Maybe he'll agree with Mr. Noble. Maybe he won't. We don't know, but if the court tells him how to exercise his independent judgment and what to look at and what not to look at, that really destroys the independence that's required by Section 7.4J. And I think there's just one more thing I want to say, and I have a little time. You know, MTAX talks about the so-called loss itself, and there's no loss here. The purchase price of Hidden Hills was $8.9 million. MTAX contributed $3.4 million, and that's at SER 135. And after 15 years, it brought back already $8.1 million in credits and write-offs. That's ER 35 paragraph 8. And on top of that, even if the fair market value is reduced for contamination, they will get another $4 million. That's at ER 105. So this is a $12 million gain, at least on the $3.4 million investment. Without paying a cent and without bearing any risk for the environmental contamination that the parties were worried about in 2001. The risk is on the HHM and the remains of the HHM. This is a profit under any definition. And just because MTAX earns more than $12 million doesn't turn a profit into a loss. I'll use the rest of my time responding to prosecutors. All right. Thank you, counsel. Mr. Petit. You're muted. Thank you. Thank you, Your Honor. If it pleases the court, I'd like to begin by addressing the Hidden Hills. Could you just introduce yourself for the record and who you represent? Absolutely, Your Honor. I apologize. Eric Petit from King and Spaulding on behalf of the cross appellants, the MTAX entities. And if it pleases the court, I'd like to begin by addressing the Hidden Hills Partnership. And then I'll turn to our appeal in connection with the other partnership, Parkway. On Hidden Hills, the undisputed evidence established that the general partner took a number of steps to manipulate the appraisal process required under Section 7.4J of the partnership agreement to determine the option price that the general partner would need to pay. They obtained multiple increasingly inflated remediation cost estimates. They misled the limited partner into believing that they were interested in selling the property while they were pursuing a third appraisal without disclosing that fact. They instructed the third appraiser, who was supposed to be independent, to deduct $3.7 million in contamination costs from the appraised value. And then when the limited partner disagreed, they sued the limited partner and instructed the third appraiser not to speak with the limited partner's representative. And based on all of this evidence, the district court found on summary judgment that the Hidden Hills general partner's actions rendered the appraisal tainted beyond salvation was the term that the district court used. And the district court also found that this behavior was particularly egregious because the general partner had previously agreed to indemnify the Hidden Hills limited partner for the environmental remediation costs that it was now seeking to use to minimize the limited partner's buyout price. Counsel, that was the issue that I was interested in, whether or not that indemnification provision precluded including that amount in the option appraisal. It does, Your Honor, for two reasons. And both of them, I think, were the district court correctly found. The first reason is that contrary to the focus on the distribution provision of the indemnity agreement, the indemnity provision, when read in its entirety, is extremely broad. And it requires that there be indemnification of really any loss on in connection with the environmental condition of the property. And they've taken the position that we somehow have, you know, that we in our summary judgment papers suggested that only this provision relating to distributions applies here. But, you know, what we said in our summary judgment brief was the only limitation on the indemnity obligation is that the liability must be connected in some form or fashion to environmental contamination. And the language in the indemnity agreement establishes as a matter of law that the environmental indemnifications are to be as broad as possible. And the district court reached the same conclusion and stated in the summary judgment order that the environmental indemnity agreement and the indemnification provision was unambiguously and intentionally broad. And the only reason why on summary judgment we pointed to the distribution language that opposing counsel has been focused on was to push back against the argument that they made on summary judgment that the indemnification language was only intended to apply to claims brought by third parties. For example, a regulatory order requiring a cleanup happen or a lawsuit brought by some third party based on the environmental contamination. And the court below rejected that position. And there's good case law that we cite in our brief, the Atari case that says that indemnity, you know, that term isn't by definition limited to third party claims. And so and the general partner hasn't challenged that ruling on appeal as to whether it's limited only to third party claims. But even if we were only to focus on the distribution language, the argument that they've made would still cover any reduction in the option price, because it's undisputed that the option price is calculated in a way that it's intended to yield a price that mirrors the amount of distributions that the limited partner would receive if the property were sold at fair market value. And the general partner admits as much. I noted that they referenced the waterfall provision, opposing counsel and oral argument, and specifically referenced excerpt of record page 105, which is the general partner's attempt to engage in this waterfall analysis. And that document itself refers to the payouts to the limited partner as distributions, because what the option price is supposed to mirror is the distributions that the limited partner would get from the partnership if the property were sold. And so and opposing counsel said that, you know, the limited partner essentially is off the hook once they're bought out on the you know, from an option. They don't have to worry about the environmental contamination anymore. But the fact is, if the option price is reduced by the cost of remediation, then the limited partner has essentially pre-funded the costs necessary to remediate because the general partner has, you know, $3.7 million more in their pocket that they don't have to pay for the option price, which they could then use to remediate the property. And so the limited partner is actually penalized in advance for remediation costs that are not required to be performed on a property that it no longer has any connection to. And the idea, if the general partner's position were correct, it would mean that the general partner would need to indemnify the limited partner from any losses resulting from a reduced sale price. If the sale of the property was to a third party, because that would result in distributions. But if the property is being acquired by the general partner, which is the indemnifying party, the party that agreed to provide the indemnity, then the limited partner does not get the benefit of that indemnification. And that result respectfully can't be reconciled with clear and expansive and open-ended language of the indemnity agreement and the indemnity provision. I'd like to turn now to the Hidden Hills Cross Appeal. And this cross appeal has to do with whether the district court correctly denied the limited partners claim that it had effectively removed the Hidden Hills general partner based on its breach of the option provision in 7.4J. And our appeal is based on two contentions. First, that the district court improperly substituted its own subjective judgment about the severity of the breach instead of applying the clear contractual removal provisions that are in the limited partnership agreement. And second, that an application of the undisputed facts to the unambiguous language of the limited partnership agreement requires a different outcome and requires upholding the removal here. And on the first point, the Hidden Hills general partner doesn't really dispute that when the district court described the breach of section 7.4J as a footfault and refused to enforce the removal right based on that breach, that they were not engaged in contract interpretation, but rather engaged in exercise of equitable discretion. And in the general partner's briefing, they even advocate for a more deferential standard on this issue on the ground that the district court was exercising equitable discretion. But as we explained in our briefing, where, like here, there's actually a contractual provision that governs removal. It's not appropriate for the courts to weigh the severity of the breach and fashion an appropriate remedy. Instead, the court must just apply the terms of the limited partnership agreement, which is the law of the partnership, and determine whether the removal was proper or effective. Counsel, in this case, wasn't the decision made in the context of a motion for summary judgment? There was a motion for summary judgment and the court reserved the question of whether removal was effective. The court rejected the general partner's suggestion that because they had exercised their option first, that means removal was off the table. And the court said, well, we'll have a bench trial and we'll decide whether a removal is the appropriate remedy here. And after the bench trial, the courts found that the breach didn't rise to the level of severity to warrant a removal of the general partners. So what's our standard of review? We're reviewing findings made after a bench trial. What's our standard of review? So when it comes to fact finding, the standard of review is an abuse of discretion. But I thought it was clear. I apologize. It's clear error, Your Honor. But what we're suggesting is that the facts, the underlying facts here are undisputed. And all that's required is an application of those undisputed facts to the terms of the partnership agreement. And so it really is a question of contract interpretation. Did the facts that were established. So, for example, the district court found that the general partner breached Section 7.4J. And they haven't appealed that. So that's an established fact. And the question is, does that fact. And then the other question is, does that fact give rise to grounds for removal? And you have to look at the terms of the partnership agreement. And the partnership agreement says if there's a breach of Article 7, it doesn't have to be a material breach. Any breach of Article 7 materiality is presumed. And the only other requirement that has to be met is that there is a reasonable likelihood that the breach would cause harm to the partnership. And as I said, Your Honor, because the court found as a matter of law that and as a matter of fact that the general partner had breached Article 7. The only question is, as a factual matter, was there a reasonable likelihood of harm to the partnership? And on that point, we think that the undisputed facts established that there were two forms of harm that were reasonable to the partnership. The first is that the partnership had to pay tens of thousands of dollars to pay for these environmental reports that were then used to drive down the value of its sole asset. And so that is a direct, tangible, immediate harm to the partnership. The court dismissed that because the general partner said, oh, well, we'll pay that amount back. But frankly, the question on removal was at the time that the removal was made, was enforced, was there a likelihood of harm to the partnership? And by admitting, oh, well, we'll pay the partnership back. Essentially, that's an admission that the partnership was harmed. OK, counsel, I'm having some difficulty with your argument that the economic detriment to the partnership was obvious in the record. So, Your Honor, I'll point to there are in the supplemental excerpts of record 283, 285, 287, 291, 294. All of those are invoices totaling tens of thousands of dollars that the partnership had to pay to the environmental consultants who prepared the remediation reports that the general partner was using to try to drive down the option price. And so the partnership, in the absence of the general partner trying to engage in that manipulation and breaching Section 7.4J, would never have had to pay those amounts because those reports never would have been ordered and those costs never would have been paid. And moreover, Your Honor, there was an additional harm because now, as the general partner admits, anytime there's a buyer who's interested in buying this property, these environmental cost estimates are going to have to be disclosed to that prospective buyer and presumably could drive down the offer price on the property. Is there any proof of that in the record, though, that you say presumably it would drive down, but there was no testimony in the record, was there, that these expenses would cause a diminution in property value? I think that the evidence that shows that in the record, Your Honor, is the appraisal reports, and particularly the appraisal reports that the general partner submitted. The appraisal report that the court found was improperly manipulated reduced the fair market value determination by $3.7 million. And so although we don't have a third party offer out there that we can compare it against, it's hard for the general partner to be arguing on the front end, oh, well, these remediation reports should bring the value down of the property. And now to be arguing, well, it's too speculative as to whether those environmental reports really would drive the value down. Counsel, do you have a case that says incurring expenses equates to economic detriment? I don't have a case that's directly on point as to these facts, Your Honor. Do you have a case that says that as a general proposition, that incurring expenses equates to economic detriment? Your Honor, I don't have a case at the top of my head. I think it's a straightforward proposition that if a partnership has to pay an expense, that the only reason why it paid it was because of the general partner's breach of their obligation. It stands to reason that, and they wouldn't have had to pay it but for the general partner's breach. It stands to reason that however much they paid that they otherwise wouldn't have to pay is an economic detriment to the partnership. In a world where the general partner didn't order these reports and didn't charge the tens of thousands of dollars to the partnership to pay these reports, the partnership would have tens of thousands of additional dollars in its bank account. The difficulty is that there are ongoing expenses that are inherent in any ongoing concern. That's why I was asking you if there is a case that talks about expenses in the context of economic detriment because it would be difficult in my view to determine which expenses constitute economic detriment and which do not. And so without a case that kind of parses that out, it's difficult for me to say in this case the expenses constituted economic detriment. But in a different case, they wouldn't without some kind of guidance or some kind of signpost to determine when expenses constitute economic detriment in light of the fact that expenses are a way of life in business. Yes, Your Honor. I think that's an excellent question. I think that the distinction is that you have to look at the motivation for the expense. It's hard to say in a vacuum what expenses are okay or what expenses are not okay. Obviously, the general partner has to incur expenses in managing the property. But when the purpose of the expense is to benefit itself and to enrich itself, then it's acting outside of its fiduciary duties to the partnership. It's acting outside of the good faith discretion of incurring expenses and is incurring these expenses specifically in order to enrich itself. And under those circumstances, and the court did find that it had breached Section 7.4J, was trying to manipulate the process, and it incurred these expenses in connection with those efforts. And so I would say that that is sufficient here to show that those expenses did impart an economic detriment to the partnership. And I'm sensitive to my time, Your Honor. I know we've got a whole other partnership to get to. I'll try to get through that very quickly because I realize I'm running out of time here. But I'd like to focus on the Parkway partnership in particular first on the removal claim, because I have a very straightforward argument to make about that. And then I'll talk very briefly about the derivative damages counterclaims. On the removal claim, there's a right under Section 7.4, excuse me, Section 4.5, to remove the general partner if they fail to provide a timely financial report. And there's no dispute that the general partner did not provide a timely financial report. But the district court excused that failure because it determined that the reason why that report wasn't provided was because the auditor withdrew based on statements that the limited partners expert made in deposition calling into question someone for past work. But as a strictly factual matter, Your Honor, the record reflects that the Parkway partnership financial statement was due and was untimely after February 15, 2019. And the deposition testimony on which the district court relied to excuse the untimely reporting did not occur until December 28, 2019. And so I just submit, for Your Honor, the simple proposition that it's illogical to attribute the reason why a report wasn't submitted by February 15 on a deposition testimony that was not provided until two weeks later. I'd like to move quickly to the derivative damages claims. And in its opening brief, the Parkway Limited Partners identified five different categories of unauthorized fees. On three of those categories, the district court didn't analyze whether they were unauthorized at all and relied entirely on the assertion of affirmative defenses and finding that there were various affirmative defenses. The briefing is, I think, very complete on the affirmative defenses. But the fact is, if those affirmative defenses do not apply, if the court finds they do not apply, then those three categories of breaches were not analyzed. And I would submit that for the reasons that are set forth in our papers, the other two categories of damages that they did identify were misanalyzed. And specifically, the double charging of the repair supervision fee, because section 4.2 of the property management agreement specifically requires the property manager to engage in that type of supervision. And so by charging an additional fee, it wasn't that they were giving something that an independent contractor would have to be paid, but essentially they were paying themselves twice for the same activity. Thank you. Counsel, I just had a question. As you noted, MTEX 169 brought derivative claims, but 114 didn't. So if you're affirming your argument that there were expenses incurred that caused economic detriment on MTEX 114, why weren't derivative claims brought in that case? Your Honor, we believed and we continue to believe that the general partner was effectively removed because of their breaches of the contract. Maybe there should have been derivative damages claims brought there. Given the magnitude of the amount of damages at issue, we were talking about a difference between millions of dollars in damages directly and tens of thousands of dollars to the partnership. But there's nothing in the partnership agreement that requires that the economic detriment be established in a court of law based on an affirmative claim for breach and damages. I get that, but I was just curious why you would have brought the derivative claims in one action and not in the other if both of them incurred the economic detriment that you're arguing for. It sort of is kind of indicative that perhaps the expenses were not economic detriment if you didn't see fit to lodge them in a derivative claim. That's why I just asked the question. I think it's a great question, Your Honor. I think the answer is it was a question of scope. When we looked at all of the breaches of the Parkway Partnership Agreement, there were hundreds of thousands. Our assertion was there was over close to $2 million worth of harm to the partnership in that case. Whereas in the Hidden Hills Partnership, when we're talking about the paying of these environmental reports, we're talking about tens of thousands of dollars. And so the harm in the Amtax 114 case was really much more targeted at the limited partner itself. Whereas with the Parkway Partnership, the various strategies that were used, the unauthorized fees, the excess repair costs, all of those were suffered in the first instance by the partnership, which is why we brought it as a derivative claim. And only incidentally, by virtue of their membership as a partner, did it then hit the limited partner. Are there any other questions for Mr. Pettit? So because this is a cross appeal, we will give you one minute for rebuttal following the presentation on the behalf of Hidden Hills. Thank you, Your Honor. On the cross appeal. Thank you. Just a word on cross appeal. Just a word on our appeal. Counsel said that, talked about the word distribution in ER 105. The issue here is what distributions are indemnified by the environmental indemnity. The environmental indemnity speaks for itself. The only distributions that are indemnified are the ones from the partnership. And the option exercise, it's not disputed, knows no such distributions. Now on cross appeal. Amtax wants to re-argue summary judgment. That train has left the station. The district court rejected the summary judgment for removal. And concluded there were hardly contested factual issues related to removal. For both Hidden Hills and for Parkway. That's ER 99 and 101. Now Amtax did not appeal the denial of summary judgment for removal. It agreed that these issues are factual. It took them to trial and lost on all grounds. And now it wants to re-argue summary judgment. I think the standard of review is very important. And it's in the brief. But when the summary judgment is denied. And followed by trial. Then the record at trial is the relevant record. Not the record of summary judgment. So we have to look at the district court's findings and conclusions. In light of the trial record. And now counsel mistakes the record. It says that the court found. The court found after trial. That Mr. Merrill violated breach section 7.4J. This is false. I urge the court to read the findings and conclusions. There's absolutely no finding of breach of 7.4J. The court found that there was a footfall by Mr. Merrill. The court also found that Mr. Merrill is credible. As to every aspect of her testimony. She's a credible witness. As opposed to two of Amtax's witnesses. Mr. Blake. And Mr. Kravishman. Especially Mr. Kravishman. Who both found to be not her. Counsel? Yes. So what did the district court mean when it said a footfall? A footfall is an infraction. Intense. So what did the court mean when it said there was a footfall? Well, I believe the fair reading of the court's findings. And what the court stated on the last day of trial. On June 10th. There's a transcript of that. Is that there was an immaterial misconduct by Mr. Merrill. At most. But the court also found there are two prongs for removal. Right? You have to establish material breach. Plus. Plus. There has to be reasonable expectation of harm to the partnership of the project. Mr. Pettit said that the breach didn't have to be material. Do you take issue with that? Well. Under the language of the contract. Mr. Pettit argues that any violation of Section 7 doesn't have to be material. We disagree with that. Because we think that Section 7 mentions materiality. So it has to be material as well. But even if it doesn't have to be material under Section 7. There is still a requirement. There has to be a reasonable. Reasonable expectation of detriment to the partnership. Reasonableness is a court standard. It requires proof by expert testimony. And in this case, there was absolutely zero. Zero proof. By MTS. On the reasonable detriment to the partnership of the project. I don't get bills or on property. And so. In fact. The district court. Explicitly found. That there is no reasonable harm. There's no reasonable harm to the partnership. Or the project. From anything that Mr. Merrill. Is accused of. By MTS. So there's also opposing counsel says that the economic detriment. Expenses that they were forced to incur. Due to the wrongdoing of your client. What is your response to that? My response to that is this is a question of fact. And if there's evidence to support. The district court's finding that there's no reasonable harm. That should be a problem. And there's plenty of evidence that there is no reason. Specifically. Mr. Merrill's testimony. That these amounts were. Were really funded. To the partnership. So there's absolutely no. Question that there is evidence. Supporting the district where it's finding that there's no reason. To the partnership or the project. So. That's. And. I think that. The court. Found very significant. All this. Damages. In the hidden hills case before trial. And there were no. So. You know, I don't think. It's an excuse to say right now. They consider the. They can't say. And then. Argue at the same time. That it causes a reasonable expectation. Of harm to the partnership. So. It was a complete failure. They had an expert witness. They have. As incredible as he was. When he testified. They didn't want him to say anything. In the hidden hills. So. Having failed to offer any group. Complete failure. There's nothing. They cannot argue. And. I want to also raise this issue. Counsel said. That. We rely. On the courts. Decisions. As to. And. The removal issue. That is not correct. There are two bases. Here. Number one. Removal. Under the partnership agreement. Requires proof of two elements. There has to be material breach. And there has to be. Independently. Proof of reasonable detriment to the partnership. Of the project. And. This is not equitable. This is. Factual findings. Materiality of the breach. Existence of any breach.  The reasonableness. Of expectation. Factual issues. And the lack of. Proof on either of these problems. Is. Easily supported by the record. And for that reason. The district courts. Dismissal of the counterclaims. And the dismissal of the. Removal. Of the. Option exercise. By. The general partner. That according to. The district court's findings. Did nothing wrong. The court found. After hearing the testimony of Mr. Merrill. Hearing from the two appraisers. And hearing from. Corey. Environmental consultant. Found that. Mr. Merrill is a credible witness. And she did nothing wrong. For those reasons. We believe that the district courts. Findings and conclusions. And the dismissal. Of the removal. Should be. Affirmed and the option exercise. Thank you. The bottle. One minute. Thank you. Just very briefly, your honor. Three points. One. The claim that the district court. Somehow backed away from its finding. On summary judgment that. The general partner breached. 7.4. J is not correct. It's excerpt of record 41. Paragraph. 28 specifically. Incorporates and references. The court's prior finding. That the appraisal was not final. And binding because it was manipulated. And then later, as your honor points out. Describes that tainted. Appraisal process as a foot fault. And so the suggestion. That the district court found. After the bench trial that. The general partner's principle did nothing wrong. Is incorrect. As a matter of fact. And number two, the. Opposing council has argued that. The breach for to give rise to removal. Needs to be material. And just this. The section, which is. 4.5. A Roman at four. Two says that removal is appropriate. If the general partner. Shall have violated any rights. Powers, duties, representations, or warranties. As set forth in article. Seven herein. Or shall have violated any material. Provision of this agreement. And so. Contract interpretation dictates that. The materiality is presumed. For a violation of article seven. And then the final thing I'll point out is that. On the establishment of harm to the partnership. The general. The district court did not find that. The expenses that were paid for the cost. Reports were somehow not expenses. That. Expenses that were okay. For the partnership to pay. Or that there was no problem with the partnership. Paying them. The district court said. It's basically excuse the general partner. For incurring those expenses. Because the general partner said, oh, well, we'll pay it back. But there's no right to just put your. The cookie back in the cookie jar. After you've taken it out. And unlike other removal provisions. Where there actually is a cure period. For a removal under the provision that we. We cited. There's no ability to cure that breach. Once that breach has happened. And it violates article seven. Then removal is warranted. If there's a reasonable likelihood of harm to the partnership. Does the record reflect. That those expenses were repaid. No, it does not. And in fact. The findings of fact and conclusions of law. States only. That the general partner has agreed. To repay to the partnership. There's no evidence in the record. That those amounts actually were repaid. To the partnership. It might be premature for them to repay them. Given the pendency of this appeal, right? I don't believe so. Your honor, because I believe that. The district court has found that they were improper. Payments for the partnership to pay. And the general partner has conceded. That they, that those. Those expenses should not have been paid. They didn't make their agreement to repay. Had paid those. And you were to prevail in your appeal. Would you be returning money? Would I. Would my clients be returning money? Yeah. If they had paid. If they had paid those expenses. If the partnership paid those expenses. Then those expenses should be repaid by the general partner. Because the general partner was the one. Who ordered the reports. In furtherance of a effort. To enrich itself. To the detriment of the limited partners. And the partnership. And that's why those costs were improper. That's why the general partner. I think you've missed my question. But effectively. The general partnership says. Okay if we made a mistake. We'll repay the money. And the district court says. Okay well that's fine. Judge Rawson's question was. Have they actually repaid the money? Your answer was no. They haven't repaid the money. Okay. So if they'd repaid the money. You effectively would have been made whole. But you've invoked. You've invoked. The removal authority. So presumably. If they made the mistake. And you decided because of that. You were going to remove them. You wouldn't be entitled to a repayment of those expenses. And get to remove the general partnership. Well your honor. It's the partnership that would be entitled to the repayment. Not my clients. The limited partners. But if the general partner were removed. Based on the removal provisions. By the limited partner. I don't believe that that would. Eliminate their liability. To the partnership. For breaching their fiduciary duties. To the partnership. While they were a general partner. So you would be able to get both your money back. And remove them. The partnership would be able to get reimbursed. For the expenses that were incurred. That harmed the partnership. And because the general partner breached. Article 7 of the partnership agreement. And that breach caused harm to the partnership. The fact that the money was repaid. Doesn't unring that bell. Or cure the harm. Did you actually sue to get that money back? Is that part of your counterclaim? No your honor. As I had mentioned to judge Rawlinson before. We did not bring derivative claims. In connection with the hidden. It feels like what the district court was trying to do. Was to try to sort of solve. All of the problems. And so by allowing the general partnership. To repay. The money. Was sort of putting things back. I understand a nice analogy on the cookie jar. Love the analogy. But it feels like this was. It feels like there's a little bit of equity going on. I understand you want very very strict. Enforcement of this. But it does feel like the district court. Has crafted a global solution. To an unfortunate. Breakdown at the very end. Of what has otherwise been a successful. Tax enterprise. Well your honor. I don't blame the district court. For wanting to fashion. An equitable remedy. But I do think that that was inappropriate. As a matter of law here. Because when you have. A contractual removal provision. It's not the courts role. To inject its own. Subjective assessment of how bad was the breach. How severe was the breach. It's really a question. And the reason why your honor. Is because when limited partners. Enter into these partnership agreements. With a general partner. They're giving up all of their control. They've given them millions of dollars of capital. They're basically trusting that the general partner. Is going to honor its contractual. And fiduciary commitments. So it's not uncommon at all. For these types of partnership agreements. To say okay. Well we're going to put a provision in. That says if you don't honor your contractual. Or fiduciary commitments. Then we are going to have a contractual remedy. And that was the case here. There was a clear provision. That was put into the limited partnership agreement. It doesn't mean that the general partner. Doesn't get their economics. They're not divested of their right. To their economic position. As a general partner. It just means that they can no longer. Control the decisions of the partnership. Because they've established under the contract. That they've breached. Provisions that the limited partner. Reasonably expected them to honor. All right. Thank you counsel. Thank you to both counsel. The case just argued. Is submitted for decision by the court. I'm sorry. Counsel took more than 20 minutes. And I would love to. We've heard. Everything we need to hear. We think we have enough information. And we understand your position. We had questions for counsel. Which helped him take. Take him over his limit. We have the issues in hand. And we understand your arguments. And we thank you both for your arguments. The case just argued. Is submitted for decision by the court. The final case on calendar for argument. Is BNSF Railway Company. Versus Columbia River Gorge Commission. And friends of the Columbia Gorge Inc.
judges: Rawlinson, Bybee, England